I'm Bob Wallace from Boise, Idaho. I practice in Boise, and I really appreciate you folks taking this much more simpler case and giving us the opportunity to address it personally. It's a restitution issue. As I reviewed it for argument, it looked like, to me, that we're actually a lot closer, the two parties are a lot closer, as well as the district court, to our appellant's position in this. There's really only one matter that I'll get to in a moment that I think I'd like this court to consider sending it back to Judge Downs to reconsider. The main areas that I think control here are that the court accurately, essentially, did not assign the precipitous, in his words, like a rock falling of the real estate market to the defendant. As the court knows the facts of this are that the property that was taken back by the bank, whose loan my client, Mr. Gossi, misrepresented some facts on, it took them about a year and a month to actually reach a final foreclosure date. A month or two after they foreclosed, there was an appraisal, and Judge Downs took that appraisal number as... Which appraisal are you talking about? The one that Judge Downs used in his factual finding. Wasn't there an appraisal prior to that? Well, that's our position, Your Honor, is that there was an appraisal as part of the sale, and we wanted the court to consider that, which was, of course, a rush. Are you talking about the appraisal on October 10, 2008? Because there were, in the record, it appears there were two appraisals, one on October 10 and one on November 22. I believe the court chose... I'm only remembering the number here, Your Honor. I apologize. It's $416,000, I believe. Right. It appears from the record there was an appraisal on October 10 for $448,000, but the court doesn't mention that, and neither do the parties, and I'm just curious why that seems to have dropped from the landscape. Well, as Judge Downs correctly observed, there were a lot of numbers floating around. And it's our position, ladies and gentlemen, that the operative date, and I think this is really clear from the Davuti case that needs to govern value, is when the bank, in this case, the victim in a restitution scheme, gets its property back and has the ability to do something with it. The last payment that the lender, Mr. Jones, whose loan my client submitted, made was over a year before the foreclosure date. It was August 1, 2007. Now, everybody knew, including the judge, that real estate began dropping after that. Now, what is unfortunate is the government didn't come forward with, and we didn't respond with or create a case precise enough to say exactly what the value of the property was on that date. When the bank first could either resume construction, perfect its security, realize the value that it relied on when it gave the loan, and that value was $907,000. It was nearly a million-dollar house, even though the loan package showed a partially built structure. They took the property's security, knowing it wasn't built, that it would have to be built. Now, as I indicated in my latest submission, there were a number of causes that weren't attributed to defendant. The default of the builder, the real estate market, which the judge did consider, but also the fact that the bank itself took on this highly collateralized loan as part of what was normal at the time. And it's unrebutted that banks just did that. That area was commented on by the court itself, pages 155A to 157 in the record. There's a little interchange where Scott Smith, another mortgage broker, says, you know, this is just the way the business was. In fact, that's one of the things that puzzles me about this case, and I think it's not relevant to the particular issue in front of us. These liar loans, so-called, were everywhere, are everywhere. Why is your client prosecuted? I mean, if we're going to prosecute everyone who did what your client did, I'm not sure there'd be anybody left walking on the street. Well, you know, that's kind of why I felt there were some equities to this case and why I wanted restitution looked at as an equitable matter. I think there's some – there isn't really any authority that does that, and I'll be – I looked for it. I couldn't find it, but I did find causation authority. It's in the government's brief. It's in our brief. It's in the recent authorities. And I think if one can look at these like-a-rock drops in real estate, and, I mean, we pled guilty. Mr. Gossie said, yeah, I lied. Yeah, sure. And I personally don't believe that's why the national mortgage gave him the loan. They gave him the loan because they gave everybody loans. Sure. They knew lots of people were lying. I mean, they might have known he was lying. But, you see, that's why they didn't do anything with the property either. That's why they sat on it for over a year. But that doesn't change the law, though. The fact that everybody was doing it doesn't make it right. So we have to apply the law. And we're here on the sentencing, on restitution. I apologize for interrupting, Your Honor. That's okay. And my questions are not directed to saying your client's innocent. No, he's guilty. He went to jail for six months. He had his own little deal that was separate from the rest of the government's case, and the judge recognized that. We're only asking, I'm only asking on his behalf for the court to pick a value that's earlier in time than the one the court picked. How much earlier? The date that the bank first had the right to foreclose. What date was that? It was on page 84 of the record. The bank's own records show that the last paid installment date due was 8-1-0-7, August 1-0-7. What does the law provide regarding in Idaho? What does the law provide regarding when a lender can foreclose on property? Your Honor, I'm vaguely familiar with Deeds of Trust, having signed a few myself as a property owner, but I'm not a real estate lawyer. So I would represent based on my own experience that they are full of powers, much like commercial leases are, to go in and cure, to take over, to build, to do whatever needs to be done. I'm not sure that banks usually do that, but I think they have the legal right to do it. But they can't do it the minute the payment's missed. I mean, there's a cure period. There is. There's a cure before a redemption, and that's probably somewhat lengthy. It's probably several months. It looks like it's 120 days. So would you agree that would be the earliest date that could be considered? Because before that, the lender couldn't foreclose. Your Honor, I would say that that might be a question of fact, because we're dealing with a security that was originally given to the bank as unbuilt. They knew there would be construction. Construction didn't happen. But if, as a matter of law, Idaho says that a lender is permitted to foreclose on a deed of trust 120 days after default, that wouldn't be a question of fact, would it? It would depend on when the default was. If the default is the builder walks away in June, the last payment's made in August, I would submit that June would be the default date. So I'd run the 120 days from there, yes. To that extent, I'd say it's factual. But in any event, Your Honor, I think picking an appraisal date after the foreclosure sale, which is what was done here, and I'm not blaming Judge Downs. I'm taking full responsibility for not anticipating this point of law and running in and doing it myself and giving him some evidence of appraisals or something as of those earlier dates. But neither the government nor Mr. Gossie submitted that. It looks like it was pretty much under the radar for everybody. That's our position, Your Honor. We'd simply like the matter remanded so that it can be put back on the radar. Okay. Why don't we hear from the other side, and then you'll save some time. May it please the Court. George Breitsmitter, AUSA, in Boise, Idaho. I represent the United States in this case. As the Court's aware, the appeal here is involving a restitution order. In this case, Judge Downs conducted two hearings after imposing sentence, focusing on the issue of restitution. Following those two hearings, the Court entered its judgment on the restitution order, which has been appealed. The specific issues that I know defense is focusing on is the amount of that restitution. I'd like to just back up. I know the Court asked a question about stated income loans. I think I used a colloquial, but yes. I'd like to just maybe briefly say, answer the Court's question, perhaps, in terms of the context of this case. As the Court's aware, there were four other defendants in the case, a total of five defendants involving loan fraud schemes. The other four defendants were involved in a scheme to defraud Zions Bank on straw-buyer-type loans. This defendant, Nick Gossie, pled guilty on a separate scheme involving national city mortgage, actually a scheme that occurred after the Zions Bank fraud scheme collapsed. He was a loan broker. Specifically, I noted getting to the Court's question earlier, his employer actually testified at the sentencing hearing and the restitution hearing that he terminated his relationship with this defendant when he learned that there was fraud occurring. The fraud, specifically on this transaction that's before the Court, involved false statements in two ways. First, the false statement with respect to the monthly income. The defendant, Mr. Gossie, first of all, recruited the straw buyer, Mr. Jones, in this case. Then secondly, prepared the false documentation, which misrepresented his income as being $14,000 per month, when in fact it was only $4,000 per month. And then secondly, the defendant, Mr. Gossie, misrepresented that this was an intent-to-occupy property, which again is something critical to the lender. They would not have loaned these funds, the $740,000 construction loan, in January 2007. We would submit but for the fraud that the defendant, Mr. Gossie, perpetrated. And just moving forward then, in terms of the chronology, the Court's aware September 08, the deed of trust or deed is transferred back to National City Mortgage. At that time, judge downs in calculating the restitution, I would submit, Your Honor, follow this Court's decision in devoutly, follow the mandatory Victim Restitution Act. There's a two-step process, the first step being the loss amount. The Court was conservative in calculating that loss amount. Let me ask you this, if I could. How firm is the case law that tells us that the valuation is as of the date of the foreclosure rather than as of the date at which the bank could have foreclosed? The law is clear that when the victim entity takes control, I think that's the words that this Court has used before. In devoutly, in Smith, in Cummings, I think it uses the word control. And I understand the Court's question in terms of the defense argument that perhaps this should have been done earlier in time. There really is nothing I would suggest. Control is an odd word. We had a case earlier this week that I don't ask you to be familiar with, and of course this was in a radically different context. And it was when does someone have dominion and control over child porn images? And the case law appears to be, at least there's a fair argument, that somebody has dominion and control over a picture on the computer, even though not later stored. I mean, control is pretty minimal. And if the question here is when does the bank have control, why doesn't the bank have control as soon as it has the power to foreclose? Your Honor, I am also, I would concede, as defense has, not particularly familiar with Idaho law on foreclosure proceedings and when that potentially could have occurred. Well, but if we were to hold that there is control as soon as the bank has the power to foreclose, that could be determined on remand. I mean, we don't have to decide that today when that actual time was. So I'm asking you in the abstract what the rule ought to be as to when do we do the valuation. Your Honor, obviously the restitution area does allow for broad discretion, and I think the use of the term control is intended to be somewhat, allow for that discretion with the trial court. And not, you know, I don't think fixing a specific point in time is probably the intent. I mean, ultimately we're looking at restoring a victim. So the victim is the bank, and so the bank is sitting there with an asset that is falling in value. The bank has it in its control to foreclose now, and if it decides it wants to wait a year and make the, and try to get the money out of the, here, Mr. Gossie, the defrauder, it can do that. And maybe the bank has enough incentive to go forward now, knowing that Mr. Gossie, while he got a restitution order against him, will never be able to satisfy it. But it's a little disconcerting if we formulate a rule that says to the bank, listen, you can either foreclose now, do your work now, and get your money, or you can delay, but don't worry because you'll get the money out of somebody else. And I would just point out, if I may, and perhaps I'm not to, there's no evidence that they sat on their rights in this case. I don't think there's any indication, contrary to what may be suggested in terms of the chronology, that National City Mortgage somehow sat back and thought that they could increase their recovery by waiting on the foreclosure proceeding. But if we had a bright line rule that the restitution date is the date at which the bank has the legal ability to foreclose, then that would put everybody on notice that, you know, if you wait beyond that time, then you do it at your own peril, rather than trying to determine whether or not someone was diligent or not diligent. Right. I mean, I understand the court's point in this regard. I mean, clearly, these entities right now, as the court's aware, given the economic times, have many, you know, this is another loan. A lot of these loans were handled out of state. And so I think... But it's part of the risk that the bank took as well. So it's not as if, you know, it was not a risk that was contemplated when the loan was... Generally, when loans are offered and made, the bank has taken a risk as to nonpayment. Yes. Although, clearly, one that they didn't foresee, given the misrepresentations that occurred at the time the loan was funded. Let me ask you this. Do you know why there was no reference made to the first appraisal? Your Honor, the court certainly focuses on a good question. I know that the court's looking at the excerpts of Record 90, which identifies that, to be candid, the parties during the restitution hearing were focused on... Defense was focused on a no-loss situation. The government was seeking a much greater loss, which we believe could have been argued. So there's nothing in the record as to why the appraisal that was done in September... I would point out, Your Honor, that the court, Judge Downs, did task the probation officer, following the second hearing, to go out and do some additional investigative work, which I would submit... You know, Judge Downs relied upon, ultimately, the second appraisal, the November 2008 appraisal. There's about a $30,000 difference, as the court's aware. But no explanation. There's no explanation. No explanation, but clearly it would appear that that was the reliable... The court found that that November appraisal was reliable, I would submit, and based on that... I'm not sure that the court was aware that there was this early appraisal. I don't see anything in the record that indicates the court was even aware of this appraisal. Although, Your Honor, on 90, that's just the oblique reference in the minutes that were kept by National City Mortgage on this particular loan. But that's evidence. I mean, the same thing is on 89 for the $416,000 appraisal. That's correct. So it's comparable evidence. Would you have any objection if we remanded this to the district court to sort all of this out? Because I don't feel comfortable that it's been sorted out. Okay. Certainly if that's what the court decides, we'll supplement the record in a remand. We would ask that the court affirm. I mean, the reason I would ask that the court consider affirming in this case, if I may, is that going back to the original calculations the court did, our conservative, the $704,000 unpaid principal amount at the time of the foreclosure does not include unpaid interest expenses and fees that this court has found like under devoutly as being appropriate. So the court could have, the district court could have included additional costs and assessed those against the defendant. But that assumes that the date that the foreclosure date was actually the date they took title as opposed to the date that they had the ability to take title. So I don't know how successful that would be. Just thinking out loud here, this case is not one in which we've got a family in the house. The house is partially completed, unoccupied, and so on. The rule that I was kind of nudging you toward, which is to say the bank's on the hook as soon as it has the power to control, would push the banks to foreclose earlier. I'm not sure that's a good rule as an across-the-board rule because a lot of these houses are going to have people in them. And we may want to have a rule that at least allows the district judge some discretion as to how to value it rather than push the bank always to foreclose early. I mean, I'm just thinking out loud and I'm not sure whether a right-line rule out of us is actually going to be a good idea. With all due respect, these transactions, as the Court is aware, are all different. In each situation, I think the entity is trying to deal with things to the extent it can given the circumstances that it has before it. Thank you for your time, Your Honor. We would respectfully request the Court affirm. Thank you. Thank you. Mr. Wallace. Thank you, Your Honor. May it please the Court, listening to the government's comments, I won't belabor some of the differences of how we look at the facts and whether Mr. Gossie recruited the Joneses or whether there was a scheme. I think the Court's aware that his loan was not part of the same conspiracy. It was a loan. This would differ from Mr. Breit's meter in calling it a scheme. I think the but-for characterization that keeps coming up, that this never would have happened if there wasn't a misrepresentation, does tend to feed into wanting to do a lot more than I think the existing law allows. I don't think a bright line or a new law is needed to get the right restitution figure here. I think just the current concepts of when is control achieved, when is there actual control by a bank? And there's tons of discretion in existing restitution law to look at other factors. That's how I read the cases anyway. So I don't think that this Court, if it remands with simply a direction to consider devouting an existing established case, would be really doing anything other than reminding Judge Downs of looking at the entire time period and directing us, what we should have done under Idaho real estate law, to tell him when the bank could have done what it ultimately did or maybe something else. So that's what we'd ask you to do. I appreciate the opportunity. Any other questions? I think not. Thank you. Thank you very much, both sides. Interesting case, United States v. Gossie, submitted. Didn't you ask him to look at the record and do something? No, no, no, no. I'm fine. Okay. Yeah, I was just talking about that first mortgage. All right. I'm fine. No, you guys are... Thank you. You're excused, as it were.    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Alarcon, Fletcher W. , Rawlinson